UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                        )
GARY CHAPMAN,                           )
          Plaintiff,                    )
                                        )
     v.                                 )   C. A. No. 09-518 S
                                        )
SUPPLEMENTAL BENEFIT RETIREMENT         )
PLAN OF LIN TELEVISION CORPORATION      )
AND SUBSIDIARY COMPANIES and LIN        )
TELEVISION CORPORATION, individually    )
and as Administrator and Fiduciary,     )
                                        )
          Defendants.                   )
_____)


**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

I.   Introduction

        After months of negotiation, Gary Chapman ("Plaintiff" or
"Chapman"), acting upon the advice of counsel, entered into an
Employment Transition Agreement and General Release, (the
"Agreement" and the "Release") with LIN Television Corporation
("Defendant" or "LIN"), outlining a severance package that
included a large lump-sum payment.  Chapman brought this action
pursuant to the Employee Retirement Income Security Act of 1974,
29 U.S.C. § 1001 et seq. ("ERISA"), over a dispute concerning
the calculation of his pension benefits due pursuant to the
Supplemental Benefit Retirement Plan of LIN Television

Corporation and Subsidiary Corporation ("Defendant" or "the Supplemental Plan"), after he retired from LIN.

In lieu of briefing the merits of the pension issue, Defendants moved for summary judgment on the basis that Chapman's ERISA claims are barred by the Release. LIN also moved for partial summary judgment on its counterclaim arguing that Plaintiff violated the promise not to sue contained in the Agreement. Plaintiff opposed both motions, arguing that he did not waive his claim because the Agreement preserves his right to sue with respect to issues arising from "payments and benefits accrued as of the Retirement Date pursuant to the Company's Retirement Plan, 401(k) Plan and Deferred Compensation Plan." (See Agreement, Doc. 26-1.)

For the reasons that follow, the Court agrees that the plain language of the Agreement includes preservation of the claims at issue here; therefore, the Court DENIES Defendants' motion for summary judgment and DENIES LIN's motion for partial summary judgment.

II.  Background

Prior to entering into the Agreement and Release, Chapman was a vested member of two retirement plans at LIN.[1]   The

---

[1] LIN is the Administrator of the Plans involved; however, neither Plan is a party to the Agreement or Release.

relationship between the Supplemental Plan and the LIN Television Corporation Retirement Plan ("the Qualified Plan") requires some brief discussion. The Supplemental Plan, also known as a top-hat plan in the industry, is only offered to high-ranking executives and provides an avenue around certain IRS limitations that are imposed upon the Qualified Plan. (See Letter dated Apr. 24, 2009, Doc. 26-7.) Moreover, Plaintiff's "benefit under the Supplemental Plan is based on and intertwined with his benefit under the Qualified Plan." (See id.) Thus, for Chapman, the two plans work together, "in tandem." (See id.)

Chapman claims that LIN committed an error in the calculation of his retirement benefits. In particular, the lump-sum payment that he received as part of his severance package was not included in the calculation of his pension benefits pursuant to the Supplemental Plan. Chapman filed for administrative review, arguing that his 'earnings' include the lump-sum payment. Notably, the definition of "earnings" for the Supplemental Plan is found in the text of the Qualified Plan.

After an adverse ruling by LIN (acting in its capacity as Administrator of the Supplemental plan), Chapman filed for an administrative appeal. The appeal was also denied, so Chapman filed suit before this Court pursuant to ERISA.

Defendants argue that Plaintiff's claims are barred by the Release, which purportedly prohibits him from suing LIN and its affiliates for ERISA benefits. LIN also requests partial summary judgment on its counterclaim against Chapman for breach of his promise not to sue (the merits of which depend upon whether or not the Release actually bars his claims).

Plaintiff opposes both motions arguing that there is no dispute "as to Mr. Chapman's right to a benefit under the Plans[,]" rather, the only question that remains is whether the lump-sum payment should be included when calculating the amount he is to receive. In response, Plaintiff argues that (1) Defendants waived their right to argue the Release defense because it was not sufficiently addressed during the administrative review; (2) Chapman's pension entitlements cannot be alienated because of the anti-alienation clause in the Supplemental Plan;[2] and (3) Chapman's claims are preserved by the Agreement.

III. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] The parties agree that ERISA's anti-alienation provision does not apply to the Supplemental Plan; however, similar language exists within the Supplemental Plan.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 13 (1st Cir. 1997). Although the court must "draw all reasonable inferences in the light most favorable to the nonmovant," the court should not "draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007). Finally, Defendants face a "'heightened scrutiny' that federal common law requires for waivers of ERISA pension benefits" and, "[w]aiver and release are affirmative defenses on which the employer bears the burden." Laurenzano v. Blue Cross & Blue Shield of Massachusetts, Inc., 191 F. Supp. 2d 223, 227 (D. Mass. 2002) (citing Fed. R. Civ. P. 8(c); other citations omitted).

IV.  Analysis

    A.    Did Defendants Preserve the Defense?

    During the administrative review, LIN considered the Release as a defense to Chapman's claims but ultimately concluded that "it d[id] not need to determine the significance of any waiver included in the Transition Agreement or General Release." (See Letter dated Apr. 24, 2009, Doc. 26-7.) Normally, when a plan administrator does not raise a defense

during the review process, that defense may be considered waived.  Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 317 (S.D.N.Y. 2003).  The Court, however, must conduct a "case-specific analysis" to determine if the Administrator waived the defense, being careful not to require administrators to:

> 'imagine every conceivable basis' for denial of a claim, out of concern that such a requirement would cause ERISA notices to become 'meaningless catalogs' of reasons for denial.

Id. at 317, 381 (quoting Lauder v. First UNUM Life Ins. Co., 284 F.3d 375, 382 (2d Cir. 2002)).  Moreover, should the Court find such a waiver, it should not impermissibly expand the scope of coverage.  Instead, the Court should consider

> the importance of determining whether the administrator was aware of a given defense at the time of the administrative decision, and if so, why the administrator chose not to rely on the defense as a reason for denial.

Id.

LIN consciously chose to deny Chapman's claim on the merits; however, this does not translate into automatic waiver of the defense.  At the time of its review, LIN was well-aware that the Release presented a potential bar to Plaintiff's claims.  The Release, however, also presented a difficult issue of contract interpretation, and one that was potentially academic in the event the underlying claim lacked merit.

Chapman not only needed to overcome the Release, but he still had to prove his case on the merits.  Thus, the Administrator chose to rest upon what appeared to be the easier ground for dismissal.  In light of the Administrator's conclusion that Chapman's claim was meritless, whether or not the Release was a bar became simply irrelevant.  Thus, after considering the facts and circumstances surrounding LIN's denial on the merits, the Court concludes that LIN did not waive its defense with respect to the Release.

B.   Did Chapman Release the Claim?[3]

This brings the Court to the crux of the matter on summary judgment, which requires interpretation of the Agreement together with the Release, to determine what rights Chapman relinquished and what rights he preserved.  The Agreement and Release "potentially affect[] rights protected by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (1988), and, thus, [are] likely subject to interpretation in accordance with tenets of federal common law."  Smart v Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995)

---

[3]   Because the Court concludes that the language of the Agreement carves an exception for Chapman's claims with respect to both the Supplemental and Qualified Plans, it need not reach the issue of the effect of the Supplemental Plan's anti-alienation provision.

(citing Pilot life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987) and stating that federal statutory and common law supply the rules of decision).

It is axiomatic that the Court is "guided by 'common-sense canons of contract interpretation.'" Id. (quoting Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir. 1989)). This includes construing unambiguous terms in accordance with their plain and natural meaning. Id. Ambiguity may exist "where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." Id. (quoting Fashion House, Inc. v. Kmart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989)). "In most cases, the question of whether a contract term is ambiguous also presents a question of law subject to plenary review." Id. If the Court determines that an ambiguity exists then the ultimate resolution will often turn on the parties' intent, which may be demonstrated by marshalling facts extrinsic to the language of the contract documents. Id. "This construct ordinarily requires the judge in a non-jury case to resolve questions of fact rather than questions of law." Id.

The Court concludes that the contract language unambiguously preserves Chapman's claims with respect to his

retirement plan at LIN.   Thus, the Court is presented with a question of law regarding the plain and natural meaning of the term "Retirement Plan," as it is used here.   The Release contains broad language of waiver covering all claims Chapman had or may have had against LIN, "including, but not limited to, all claims arising out of [Chapman]'s employment with, and Transition from employment with, Company, all discrimination claims under . . . the Employee Retirement Income Security Act of 1974 (29 U.S.C. §1001 et seq.)."  The Court is also cognizant that the Release was procured in exchange for substantial consideration, after significant negotiation between sophisticated players.[4]

Despite its broad waiver language, the Release does preserve a specific subset of claims that Chapman may have.

> [P]rovided, however, that [Chapman] **does not release Company from any claims arising out of Company's failure to perform its obligations under the Transition Agreement and General Release** between [Chapman] and Company, dated as of even date herewith.

---

[4]  Defendants argue that this language supports a broad waiver of all possible ERISA claims.   The Court finds this argument disingenuous because Defendant also agrees that some of Chapman's ERISA claims, those parts of the Qualified Plan, are preserved.   Moreover, it is unlikely that this purported general waiver language would meet the heightened burden necessary for releasing all of Chapman's potential ERISA claims.

(See Release, Doc. 26-2 (emphasis added).)   The Agreement further provides at ¶ 3.(b)(z) that:

> [Chapman] shall only be entitled to receive the Severance Payment and any other consideration contemplated hereby upon execution of this Agreement . . . . Except for . . . payments and benefits accrued as of the Retirement Date **pursuant to the Company's Retirement Plan, 401(k) Plan and Deferred Compensation Plan**, [Chapman] shall be entitled to no other payments or remunerations of any kind.

(See Agreement, Doc. 26-1.)   Chapman argues that he is suing pursuant to this paragraph for retirement benefits that he is entitled to receive and Defendants refuse to pay.   As mentioned, the paragraph preserves Chapman's claims concerning "the Company's Retirement Plan, 401(k) Plan and Deferred Compensation Plan[;]" however, the parties differ as to whether the Company's Retirement Plan includes the Supplemental Plan.

In order to resolve this dispute the Court must consider the entire context of the Agreement and Release.   "The Company" is defined as LIN Television Corporation; however, "the Company's Retirement Plan" is not the proper name of any particular plan.   Defendant argues that this only refers to the Qualified Plan, otherwise known as the LIN Television Corporation Retirement Plan.   Defendant relies upon Smart v. Gillette, to argue that the contract interpretation principle *expressio unius est exclusio alterius* supports that the

Supplemental Plan was purposely excluded from this paragraph. 70 F.3d at 179. This principle does not blindly apply in every instance, but means "expressing one item of [an] associated group or series excludes another left unmentioned." United States v. Vonn, 535 U.S. 55, 65 (2002). The problem with Defendants' interpretation is that, unlike the plaintiff in Smart who tried to incorporate an unwritten term into the contract language, here, the written term (Retirement Plan) refers to the entire plan for Chapman.

In Smart, the Court held that the plaintiff waived her claims under the Long Term Disability Plan ("LTD") when she signed the release. 70 F.3d at 179. The company had initially sent the plaintiff an agreement and release that preserved her LTD claims, but waived any Workers Compensation claims she may have had. Id. at 177. Plaintiff chose to negotiate, with the assistance of a lawyer, and the second draft of the Agreement and Release preserved her claims for Workers Compensation, but the language preserving her LTD claims was dropped. Id.

Plaintiff argued that the release was "[i]n consideration of the severance pay and other benefits to be provided you[,]" which created an ambiguity as to whether the LTD benefits were preserved. Id. at 178 (emphasis added). The Court analyzed the rest of the severance agreement and concluded that "other

benefits" referred only to those benefits actually "enumerated in the text of the document itself[,]" and LTD benefits were not included.  Id. at 179 (emphasis in original).  The Court rejected her argument and applied the doctrine of *expressio unius est exclusio alterius*, which, as mentioned, "instructs that, when parties list specific items in a document, any item not so listed is typically thought to be excluded."  Id. (citing FDIC v. Singh, 977 F.2d 18, 22-23 (1st Cir. 1992)).

The contract language here, however, is very different than the contract language in Smart.  Simply put, "the Company's Retirement Plan" most logically refers to the Supplemental Plan and the Qualified Plan, which comprises the total retirement plan for Plaintiff at LIN.  In contrast, Defendants ask the Court to define LIN Television Corporation's Retirement Plan to include only half of Chapman's negotiated retirement benefits.  To conclude that the term "Retirement Plan" excludes the supplement, the Court would have to read a distinction into the Agreement that simply does not exist.  A common-sense reading of the entire Agreement with the Release is that Chapman did not waive the claims that might arise from his retirement plan at LIN.  And for this particular employee, the Retirement Plan is composed of two parts that work together as a whole.

The Court concludes that Chapman is seeking to enforce benefits he believes are due to him under LIN's retirement plan, which is composed of both the Qualified and the Supplemental Plan.  Therefore, his claims are not barred by the Release and summary judgment must be denied.

V.   Conclusion

For these reasons, Defendants' motion for summary judgment is DENIED and LIN's partial motion for summary judgment on its counterclaim is also DENIED.

IT IS SO ORDERED:

*/s/ William E. Smith*

William E. Smith
United States District Judge
Date:  July 16, 2010