UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                    )
GARY CHAPMAN,                       )
        Plaintiff,                  )
                                    )
    v.                              )   C. A. No. 09-518 S
                                    )
SUPPLEMENTAL BENEFIT RETIREMENT     )
PLAN OF LIN TELEVISION CORPORATION  )
AND SUBSIDIARY COMPANIES and LIN    )
TELEVISION CORPORATION, individually)
and as Administrator and Fiduciary, )
        Defendants.                 )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

I.  Background[1]

Plaintiff Gary Chapman resigned from LIN Television Corporation ("LIN") on July 10, 2006 after negotiating, with the assistance of counsel, the terms of an Employment Transition Agreement ("Agreement") and General Release ("Release"). Chapman is a vested member of two of LIN's retirement plans, viz., the Supplemental Benefit Retirement Plan of LIN Television and Subsidiary Companies ("Supplemental Plan") and the LIN Television Corporation Retirement Plan ("Qualified Plan"). (Compl. ¶ 4, 8.) The Supplemental Plan, known as a "top-hat" plan in the industry, is only offered to high-ranking executives

---

[1] Additional facts underlying this dispute are set forth in Chapman v. Supp. Benefit Ret. Plan of LIN Television Corp., 723 F. Supp. 2d 485, 486-87 (D.R.I. 2010).

and provides certain tax benefits. (Letter dated Apr. 24, 2009, ECF No. 26-7.) Chapman's Supplemental Plan benefit is "based on and intertwined with" his Qualified Plan benefit. (Id.)

In October 2009, Chapman brought this suit against Defendants LIN and the Supplemental Plan pursuant to the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") for a determination of his retirement benefits under the Supplemental Plan. Chapman seeks a ruling that the lump-sum payment he received as part of his severance package should be included as "earnings" for purposes of calculating his Supplemental Plan benefits. (Compl. ¶¶ 13, 15.) LIN has counterclaimed, alleging that Chapman breached the terms of the Agreement and Release. (Defs.' Answer and Defenses to Pl.'s Compl. and LIN Television Corp.'s Original Countercl. ¶¶ 9, 10, 16, ECF No. 12.) According to LIN, Chapman contracted not to file claims against it arising out of his employment or transition, and Chapman's filing of this suit constitutes a breach of that contract. (Id. ¶ 16.)

In April 2010, Defendants moved for summary judgment on their affirmative defenses, and Defendant LIN moved for partial summary judgment on its counterclaim. The central issue presented in LIN's motion for partial summary judgment was whether Chapman had released the claims at issue in this suit. The Court concluded in its July 13, 2010 Opinion and Order

("Order") that Chapman had preserved the claims, and denied the motions. Chapman v. Supp. Benefit Ret. Plan of LIN Television Corp., 723 F. Supp. 2d 485, 491 (D.R.I. 2010). Chapman now moves to dismiss LIN's counterclaim, presenting the related issue of whether Chapman has breached the terms of the Agreement by filing the Complaint, and more specifically, whether Chapman covenanted not to bring this claim. The Court concludes that the purported covenant not to sue does not cover the claim set forth in the Complaint and grants Chapman's motion to dismiss LIN's counterclaim.

II. Discussion[2]

When ruling on a 12(b)(6)[3] motion to dismiss a counterclaim, the Court takes as true the well-pleaded facts set forth in the

---

[2] Defendants have asked the Court to convert Plaintiff's motion to dismiss into a motion for summary judgment. The Court, when passing on a 12(b)(6) motion, may consider the pleadings, "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)). Here, the Court discerns no need to convert the instant motion into a motion for summary judgment. In addition to the pleadings, the Court considers its July 16, 2010 Order in this case, the underlying motions, and the contracts attached to those motions. The filings are matters of public record, and the contracts are integral to the allegations set forth in the Complaint and Counterclaim.

[3] Chapman's motion to dismiss and the memorandum in support thereof do not indicate under which subsection of Rule 12 they bring this motion. However, it is apparent that Chapman brings this motion pursuant to Rule 12(b)(6). Chapman states that the

counterclaim, drawing all reasonable inferences in favor of the non-moving party. See Boroian v. Mueller, 616 F.3d 60, 64 (1st Cir. 2010). To survive a motion to dismiss, the counterclaim must plead facts "that raise a right to relief above the speculative level" such that it is plausible that relief may be granted. Citibank Global Mkts., Inc. v. Rodriguez Santana, 573 F.3d 17, 23 (1st Cir. 2009).

Plaintiff argues in his motion to dismiss that, in light of the reasoning set forth in the Court's Order, LIN's counterclaim necessarily fails. Defendants, of course, dispute this, arguing that the Order is not dispositive of the counterclaim.[4] The Order, according to Defendants, addressed the release and waiver of ERISA benefits (an affirmative defense), and not the merits of LIN's counterclaim, which they say is a breach of contract

---

Counterclaim should be dismissed because "LIN no longer has a legal foundation on which to base the Counterclaim." (Pl.'s Mem. in Support of Mot. to Dismiss Def. LIN Television Corp.'s Countercl. ¶ 5, ECF No. 41-1.) The Court understands this to mean that Plaintiff alleges that the Counterclaim does not state a claim for which relief may be granted. See Fed. R. Civ. P. 12(b)(6).

[4] Defendants' opposition to Plaintiff's motion to dismiss asks the Court in passing to reconsider its July 16, 2010 Order denying their motions for summary judgment and partial summary judgment. This request was not properly brought as a motion for reconsideration, and Defendants have failed to demonstrate that there was a manifest error of law or newly discovered evidence justifying reconsideration. See Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81-82 (1st Cir. 2008) (setting forth the standard for a motion for reconsideration). Therefore, the Court will not reconsider its prior Order here.

claim grounded in the covenant not to sue. (Def./Counter-Pl. LIN Television Corp.'s Resp. in Opp. to Pl./Counter-Def. Gary Chapman's Mot. to Dismiss LIN Television Corp.'s Countercl. 1-2, ECF No. 42.)

The Court applies federal common law in interpreting the Agreement and the Release, because the documents may affect rights protected by ERISA. See Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995). Unambiguous contract terms are to be construed to reflect their plain meanings. Id.

An understanding of the contracts underlying Chapman's resignation from LIN is necessary for assessing the parties' arguments. The Agreement lays out the compensation to which Chapman was entitled upon his departure. It provides for a substantial severance package, including a lump-sum payment, and further states that,

> [Chapman] shall only be entitled to receive the Severance Payment and any other consideration contemplated hereby upon execution of this Agreement . . . . Except for . . . payments and benefits accrued as of the Retirement Date pursuant to the Company's Retirement Plan, 401(k) Plan and Deferred Compensation Plan, [Chapman] shall be entitled to no other payments or remunerations of any kind.

(Agreement ¶ 3(b)(z), ECF No. 26-1.)

This Court has ruled previously that the reference in this paragraph to the "Company's Retirement Plan" is a broad

5

reference to Chapman's negotiated retirement benefits, comprising both the Supplemental Plan benefit and the Qualified Plan benefit. Chapman, 723 F. Supp. 2d at 491. The language however plainly limits Chapman's entitlement to those benefits and payments accrued by Chapman's retirement date. As discussed at more length in the Order, the Complaint was brought pursuant to this paragraph of the Agreement. Id. at 490.

In addition to the Agreement, Chapman and LIN also executed a Release. The Release contains broad language of waiver generally releasing all claims Chapman had or may have had against LIN (the "Waiver Provision") and a provision promising not to bring suit to enforce those claims (the "Covenant Not to Sue"). Both provisions, however, carve out exceptions for claims arising out of LIN's failure to adhere to the terms of the Agreement and the Release. The pertinent part of the Release for this discussion is the Covenant Not to Sue, which provides that:

> [Chapman] further covenants and agrees not to file any complaints, charges, or claims against any Released Party with respect to any matters arising out of [Chapman]'s employment with or Transition from [LIN], except such complaints, charges or claims <u>as may arise out of the breach by [LIN] of its obligations under the Transition Agreement</u>.

(Release, ECF No. 26-2 (emphasis added).)[5]

---

[5] The exception to the Waiver Provision is similar to that of the Covenant Not to Sue, stating that Chapman "does not

6

In opposition to Chapman's motion to dismiss, Defendants regurgitate some of the arguments LIN pressed in its motion for partial summary judgment. The Court need not reiterate at length the grounds for its denial of that motion. In short, ¶ 3(b)(z) of the Agreement expressly provides that Chapman is entitled to "payments and benefits accrued as of the Retirement Date pursuant to the Company's Retirement Plan." (Agreement ¶ 3(b)(z), ECF No. 26-1.) This reference to the Company's Retirement Plan includes both the Supplemental and Qualified Plans. Chapman, 723 F. Supp. 2d at 491. Therefore, Chapman's suit, by purporting to enforce the terms of the Supplemental Plan, purportedly seeks to enforce the terms of the Agreement. Under the exception contained in the Waiver Provision of the Release, Chapman has not waived these claims. Id. Because both the Waiver Provision and the Covenant Not to Sue except claims relating to LIN's "obligations under the Transition Agreement," the Court concludes that Chapman has not covenanted not to bring the claim at issue.[6] (Release, ECF No. 26-2.)

---

release [LIN] from any claims arising out of [LIN]'s failure to perform its obligations under the Transition Agreement and General Release between [Chapman] and [LIN]." (Release, ECF No. 26-2 (emphasis added).)

[6] Defendants also argue that there is a distinction between a release or waiver of claims and a covenant not to sue, and therefore, the Court's previous ruling on waiver and release is not dispositive, as Plaintiff suggests. The legal distinction between a covenant not to sue and a release is not important

Defendants do however raise a new argument in connection with this motion. They argue that Chapman's claim does not fall under the exception to the Covenant Not to Sue because the benefits Chapman seeks had not accrued by his retirement date. Defendants point to Section 3 of the Agreement, which provides that Chapman's severance payments are contingent on his performance of certain obligations and the passage of a seven-day revocation period.[7] LIN bore no responsibility under the Agreement, they say, until the obligations were satisfied. Defendants conclude that for this reason, the lump-sum payment had not accrued by Chapman's retirement date, and thus does not fall within the purview of ¶ 3(b)(z).

The Court sees it differently. Not uncommon to executive compensation packages, Chapman's retirement benefits come out of

---

here, however, because the unambiguous language of the Covenant Not to Sue dictates the Court's outcome. Therefore, the Court does not need to decide whether the Release could preserve Chapman's claim but not allow him to pursue it.

[7] Section 3 of the Agreement states in relevant part:

> (b) The Severance Payment and any and all other consideration due and payable hereunder are expressly conditioned upon (i) [Chapman's] performance of his covenants and obligations hereunder, (ii) execution by [Chapman] of a Resignation and a General Release, which shall be presented to [Chapman] by [LIN] on the Retirement Date . . ., and (iii) [Chapman's] election to not revoke this Agreement or the General Release within the applicable seven (7) day period permitted in such General Release.

(Agreement 2, ECF No. 26-1.)

two buckets. One bucket holds the retirement benefits he receives from his vested membership in LIN's Qualified and Supplemental Plans. These benefits are contemplated in ¶ 3(b)(z) of the Agreement, and they are not subject to the contingencies in Section 3. Chapman draws his termination benefits from the other bucket, which holds his severance package, including the lump-sum payment. Chapman's receipt of these benefits is subject to the Section 3 contingencies, including the expiration of the revocation period.

This suit is plainly a request for the proper calculation of Chapman's retirement plan benefits, not his termination benefits. It is true that Chapman believes that the calculation of "earnings" for purposes of his retirement benefits includes the lump-sum severance payment. But, the Complaint seeks relief from LIN's purported breach of its obligation to pay benefits under the Retirement Plan, pursuant to the Agreement. While the suit was not brought to enforce the terms of the Agreement, it is an action that grows out of the rights specifically referred to and preserved in that Agreement. Chapman's right to receive correctly-calculated benefits under the Retirement Plan had accrued by his retirement date, and therefore this suit does not breach the terms of the Covenant Not to Sue. Because the filing of the Complaint did not breach the Covenant Not to Sue, LIN's counterclaim fails to state a claim.

III. Conclusion

For the foregoing reasons, Plaintiff's motion to dismiss LIN's counterclaim is GRANTED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: March 3, 2011